**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2754-19

ALEX ORTIZ,

      Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

      Respondent-Respondent.

_____

Argued October 4, 2021 – Decided October 29, 2021

Before Judges Messano and Rose.

On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. x-xx-xx421.

Ronald J. Ricci argued the cause for appellant (Ricci & Fava, LLC, attorneys; Ronald J. Ricci, of counsel and on the briefs; Brooke Bagley, on the briefs).

Thomas R. Hower, Staff Attorney, argued the cause for respondent (Robert S. Garrison, Jr., Director of Legal Affairs, PFRSNJ, attorney; Robert S. Garrison, Jr., on the brief).

PER CURIAM

Petitioner Alex Ortiz appeals from a February 10, 2020 final decision of the Board of Trustees (Board) of the Police and Firemen's Retirement System (PFRS), denying his application for accidental disability retirement (ADR) benefits pursuant to N.J.S.A. 43:16A-7. We affirm.

I.

In October 2016, Ortiz applied for ADR benefits, claiming he suffered from post-traumatic stress disorder (PTSD) as the result of a January 22, 2016 shooting incident, while performing his duties as an officer with the Passaic Police Department (PPD). Ortiz reported that he responded to a dispatcher's call of a carjacking by three males, "with a handgun taking a silver Ford." Upon approaching the car, Ortiz "heard a gunshot" and saw Officer Robert Santana "on the ground not moving, []or responding to [Ortiz]." The rear passenger extended his arm and pointed a handgun at Ortiz, who fired "one round" at the passenger.

The Board denied petitioner's application for ADR benefits, determining "his disability [wa]s the result of a pre-existing disease alone or a pre-existing disease that [wa]s aggravated or accelerated by the work effort." The Board also found the incident was not "undesigned and unexpected." Further, the Board

2

determined Ortiz's disability "did not result from direct personal experience of a terrifying or horror-inducing event that involved actual or threatened death or serious bodily injury" to Ortiz or someone else. The Board found no evidence that the incident was "objectively capable of causing a reasonable person in similar circumstances to suffer a disabling mental injury." Accordingly, the Board denied Ortiz's application for ADR, but granted ordinary disability retirement benefits. See N.J.S.A. 43:16A-6.

Thereafter, Ortiz filed an administrative appeal, and the matter was transmitted to the Office of Administrative Law as a contested case. During the two-day hearing, Ortiz testified on his own behalf, and the parties presented competing expert testimony on Ortiz's PTSD claim. The ALJ also considered documentary evidence, including Ortiz's application for ADR, his job description, police reports, and the psychologists' evaluations.

Ortiz testified consistently with the facts set forth in his ADR application and expounded upon his background. At the time of the incident, he was a twelve-year veteran with the PPD. In the course of his employment, Ortiz worked "various assignments, . . . including desk duty, prisoner transport, jailer, traffic division, hospital division, and patrol." Ortiz acknowledged that all assignments required officers to "carry[] a gun," otherwise they "would be

considered unfit for duty." Throughout his career, Ortiz was "involved physically" with suspects or inmates about "ninety percent" of the time. He made arrests "[a]ll the time." Ortiz fired his weapon on one prior occasion; he shot and killed a dog while serving a summons and complaint.

During the present incident, Ortiz heard a "pop" that sounded like a gunshot; he later learned another officer had struck the stolen car's window with his baton. But Ortiz had "no doubt" one of the suspects had pointed a "chrome gun" at him. Another officer retrieved the suspect's gun. On cross-examination, Ortiz acknowledged he was trained, when confronting deadly force, to discharge his service weapon "to stop the threat . . . basically, to kill the individual."

The ALJ issued a written initial decision, concluding Ortiz was not entitled to ADR benefits because the event was neither "objectively capable of causing a reasonable person in similar circumstances to suffer a disabling mental injury," nor "undesigned and unexpected." In reaching her decision, the ALJ thoroughly summarized the testimony adduced at the hearing, made findings of fact, and surveyed the applicable law. Citing our Supreme Court's decisions in Patterson v. Board of Trustees, State Police Retirement System, 194 N.J. 29 (2008), and Richardson v. Board of Trustees, Police & Firemen's Retirement System, 192 N.J. 189 (2007), the ALJ correctly recognized in this matter that

4

Ortiz must first demonstrate he experienced a "traumatic event," see Patterson, 194 N.J. at 34, and then establish that the event was "undesigned and unexpected," see Richardson, 192 N.J. at 212.

As to the first issue, the ALJ credited the testimony of both experts as credible and competent, but the ALJ ultimately determined the Board's expert was more believable because his findings "were based upon the totality of the information that he had received and reviewed as well as his examination of Ortiz." The ALJ also concluded Ortiz "failed to meet the burden of demonstrating, by a preponderance of the evidence, that the permanent and total disability was a direct result of the traumatic incident" because Ortiz suffered from many pre-existing "stressors."

Turning to the second issue, the ALJ found Ortiz fired his service weapon after "seeing the rear passenger point a gun at him." As such, it was "clear . . . that Ortiz perceived he faced a credible threat of 'death or serious injury.'" Nonetheless, that interaction was not "undesigned or unexpected." Instead, the ALJ concluded "a police officer is trained for this very interaction and having to deal with armed individuals is part of his duty as an officer."

Accordingly, the ALJ concluded Ortiz failed to demonstrate his disability was directly caused by a traumatic event at work, and that the event was not

5

"undesigned and unexpected."  After Ortiz filed exceptions and PFRS replied, the Board issued its final administrative decision, adopting the ALJ's initial decision.  This appeal followed.

On appeal, Ortiz argues the Board erroneously adopted the ALJ's decision, which, he maintains:  (1) failed to determine Ortiz experienced a "terrifying or horror-inducing event"; (2) incorrectly attributed his injury to pre-existing conditions; and (3) misapplied the law by concluding the event was not undesigned and unexpected.

## II.

"Our review of administrative agency action is limited."  Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011).  Reviewing courts presume the validity of the "administrative agency's exercise of its statutorily delegated responsibilities."  Lavezzi v. State, 219 N.J. 163, 171 (2014).  For those reasons, "an appellate court ordinarily should not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence."  In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008).  "The burden of demonstrating that the agency's action was

A-2754-19

arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006).

"[T]he test is not whether an appellate court would come to the same conclusion if the original determination was its to make, but rather whether the factfinder could reasonably so conclude upon the proofs." Brady v. Bd. of Rev., 152 N.J. 197, 210 (1997) (quoting Charatan v. Bd. of Rev., 200 N.J. Super. 74, 79 (App. Div. 1985)). "Where . . . the determination is founded upon sufficient credible evidence seen from the totality of the record and on that record findings have been made and conclusions reached involving agency expertise, the agency decision should be sustained." Gerba v. Bd. of Trs., Pub. Emps.' Ret. Sys., 83 N.J. 174, 189 (1980), overruled on other grounds by Maynard v. Bd. of Trs., Teachers' Pension & Annuity Fund, 113 N.J. 169 (1988). That said, appellate courts review de novo "an agency's interpretation of a statute or case law." Russo, 206 N.J. at 27.

The PFRS provides for both ordinary disability benefits, N.J.S.A. 43:16A-6, and accidental disability benefits, N.J.S.A. 43:16A-7. Ordinary disability benefits only necessitate that the employee demonstrate that he is permanently "mentally or physically incapacitated for the performance of his usual duty and

7

of any other available duty in the department which his employer is willing to assign to him." N.J.S.A. 43:16A-6(1). Alternatively, accidental disability benefits require the employee demonstrate he "is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties." N.J.S.A. 43:16A-7(a)(1). "[A]n accidental disability retirement entitles a member to receive a higher level of benefits than those provided under an ordinary disability retirement." Patterson, 194 N.J. at 43.

In Richardson, 192 N.J. at 212-13, the Court held that a claimant seeking accidental disability retirement benefits must prove:

1.  that he is permanently and totally disabled;

2.  as a direct result of a traumatic event that is

    a.  identifiable as to time and place,

    b.  undesigned and unexpected, and

    c.  caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);

3.  that the traumatic event occurred during and as a result of the member's regular or assigned duties;

4.  that the disability was not the result of the member's willful negligence; and

A-2754-19

5. that the member is mentally or physically incapacitated from performing his usual or any other duty.

The Court defined a "traumatic event" as "essentially the same as what we historically understood an accident to be—an unexpected external happening that directly causes injury and is not the result of pre-existing disease alone or in combination with work effort." Id. at 212.

An applicant who has suffered a "permanent mental disability as a result of a mental stressor, without any physical impact" must meet an additional requirement to qualify for an accidental disability retirement. Patterson, 194 N.J. at 33-34. In Patterson, the Court held:

> The disability must result from direct personal experience of a terrifying or horror-inducing event that involves actual or threatened death or serious injury, or a similarly serious threat to the physical integrity of the member or another person. By that addition, we achieve the important assurance that the traumatic event posited as the basis for an accidental disability pension is not inconsequential but is objectively capable of causing a reasonable person in similar circumstances to suffer a disabling mental injury.
>
> [Id. at 34.]

In Russo, the Court clarified that the objective reasonableness standard is met after a petitioner has experienced a "terrifying or horror-inducing event." 206 N.J. at 33. Nonetheless, we have held that "the diagnostic criteria for PTSD

9

are not identical to the <u>Patterson</u> requirement." <u>Thompson v. Bd. of Trs., Teachers' Pension & Annuity Fund</u>, 449 N.J. Super. 478, 495 (App. Div. 2017), <u>aff'd o.b.</u>, 233 N.J. 232 (2018). "[T]he Supreme Court in <u>Patterson</u> . . . did not hold that any employee who obtains a PTSD diagnosis qualifies for accidental disability benefits." <u>Ibid.</u>

Thereafter, the Court summarized a two-part analysis in cases of permanent mental incapacity resulting from "an exclusively psychological trauma." <u>Mount v. Bd. of Trs., Police & Firemen's Ret. Sys.</u>, 233 N.J. 402, 426 (2018). "The court first determines whether the member directly experienced a 'terrifying or horror-inducing event that involves actual or threatened death or serious injury, or a similarly serious threat to the physical integrity of the member or another person.'" <u>Ibid.</u> (quoting <u>Patterson</u>, 194 N.J. at 50). If the event meets the <u>Patterson</u> test, the court then applies the <u>Richardson</u> factors to the member's application. <u>Ibid.</u>

As the Court observed in <u>Russo</u>, "an employee who experiences a horrific event which falls within his job description and for which he has been trained will be unlikely to pass the 'undesigned and unexpected' test." 206 N.J. at 33. Nonetheless, "the Board and a reviewing court must carefully consider not only

the member's job responsibilities and training, but all aspects of the event itself. No single factor governs the analysis." Mount, 233 N.J. at 427.

Guided by these principles, we are satisfied the Board correctly concluded the event was not "undesigned and unexpected" as required under Richardson. 192 N.J. at 212. As the ALJ aptly concluded, Ortiz "[wa]s trained for this very type of interaction," and his duties as a police officer included "deal[ing] with armed individuals."

Indeed, Ortiz was a twelve-year veteran of the police force, trained in discharging his service weapon. His duties included making arrests and physical encounters with suspects. Some of those situations could be expected to involve the discharging of his service weapon. That was the case here, where the officers were called to a carjacking in progress, during which a handgun was brandished. There was nothing here that fell outside the scope of Ortiz's general duties as a police officer. He was not placed in a situation where he lacked equipment or training. Given the totality of the circumstances here, it was not unreasonable for Ortiz to anticipate that shots might be fired.

We therefore agree with the Board's decision that the event was not undesigned and unexpected. In view of our determination, we need not reach Ortiz's remaining contentions.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

12